UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STERLING MALLORY,

      Petitioner,

v.                                     Case No.  4:14cv614/MW/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 17).  Petitioner replied.  (Doc. 20).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On May 27, 2010, petitioner was convicted by jury verdict of attempted second degree murder with a firearm, inflicting great bodily harm, in Leon County Circuit Court Case No. 09-CF-1630.  (Doc. 17, Ex. A, pp. 99-103).[1]  The crime occurred on May 17, 2009, outside the Shriner's Center in Tallahassee, Florida, as guests of a graduation party at the Center were departing.  Petitioner and two "associates"[2] – Tyrone "Weasel" Jackson and LaDarin "Jerrell" Brown – were in the parking lot when LaDarin Brown got into a fist fight with Radelle Days, a parent chaperone at the party.  Tyrone Jackson then got into a fist fight with Days' girlfriend's nephew, Keldrick Kirkland.  While those four men were fighting, petitioner ran up to Mr. Days, shot him five times and fled.  Witnesses placed petitioner at the scene of the crime.  DNA evidence placed petitioner along the path the shooter fled.  Three eyewitnesses (Keldrick Kirkland, Roy Linder and Tyrone Jackson) made in-court identifications of petitioner as the shooter.  (Exs. B-D).[3] Petitioner's defense strategy, as later described by defense counsel, was to create as much confusion as possible over who actually shot Mr. Days, and to point the finger

---

[1] All references to exhibits are to those provided at Doc. 17, unless otherwise noted.

[2] This is petitioner's term.  (*See* Ex. M, pp. 71-72).

[3] These facts are derived from the evidence presented at trial (Exs. B-D), viewed in the light most favorable to the prosecution and with the presumption that the jury resolved all conflicting inferences in favor of the State and against petitioner.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

at Tyrone Jackson.   (Ex. M, pp. 81-84 (postconviction evidentiary hearing transcript)).

On June 21, 2010, petitioner was adjudicated guilty and sentenced to life in prison. (Ex. F).  Judgment was rendered that day. (Ex. A, pp. 159-167).  A corrected judgment was entered February 7, 2011, to correct a clerical error (the original written judgment erroneously indicated that petitioner's conviction was pursuant to a no contest plea).  (Ex. H).

Petitioner appealed from the judgment.  (Doc. A, p. 170).  Appellate counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *In re Anders Briefs*, 581 So. 2d 149 (Fla. 1991), asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, with the exception of the trial court's improper imposition of a fine that was not orally pronounced at sentencing.  (Ex. I).  On September 22, 2011, the Florida First District Court of Appeal (First DCA) affirmed the judgment and sentence, but struck the fine and corresponding surcharge and court cost, stating:

> We find no error in appellant's judgment and sentence. However, we find the trial court erred in imposing, in the written judgment and sentence; a $2,100 fine pursuant to section 775.083, Florida Statutes (2009); a 5% surcharge in the amount of $105 pursuant to section 938.04, Florida Statutes (2009); and a $20 court cost pursuant to section 938.06, Florida Statutes (2009).  As the State properly concedes, the trial court failed orally to pronounce the fine; therefore,

the imposition of the fine, surcharge, and cost was error.  See Pullam v. State, 55 So. 3d 674, 675 (Fla. 1st DCA 2011).

> Accordingly, we affirm the judgment and sentence but remand for entry of a corrected judgment striking the $2,100 fine, the $105 surcharge, and the $20 court cost.

*Mallory v. State*, 70 So. 3d 738 (Fla. 1st DCA 2011) (copy at Ex. L).  Petitioner did not seek further review in the United States Supreme Court.  (Doc. 1, p. 3 in ECF).

On or about June 11, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Ex. M, pp. 1-35), which he later amended to add an additional claim, bringing the total to nine (*id*., pp. 37-49). The state circuit court appointed counsel to represent petitioner and held an evidentiary hearing.  (Ex. M, pp. 55-56 (orders appointing counsel and setting evidentiary hearing) and pp. 67-108 (evidentiary hearing transcript)).  At the close of the hearing, the circuit court denied postconviction relief, stating its reasons on the record.  (Ex. M, pp. 103-108).  The court's oral rulings were followed by a written order stating, in relevant part:

> [I]t is hereby
>
> ORDERED AND ADJUDGED that the motion be denied. Based on the reasons as announced on the record, the Court finds that Defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency.

(Ex. M, p. 59).  The First DCA affirmed, per curiam and without a written opinion.  *Mallory v. State*, 133 So. 3d 933 (Fla. 1st DCA 2014) (Table) (copy at Ex. Q).  The mandate issued April 7, 2014.  (Ex. T).  Petitioner's notice to invoke the discretionary jurisdiction of the Florida Supreme Court was dismissed for lack of jurisdiction on April 24, 2014, citing *Jenkins v. State*, 385 So. 2d 1356 (Fla. 1980).  *Mallory v. State*, 143 So. 3d 920 (Fla. 2014) (Table) (copy at Ex. W).

On July 7, 2014, petitioner filed a second Rule 3.850 motion.  (Ex. X).  The state circuit court denied the motion, finding it "procedurally barred as untimely and successive."  (Ex. Y, p. 1).  Petitioner did not appeal.  (Doc. 1, p. 5 in ECF).

Petitioner filed his federal habeas petition on November 6, 2014.  (Doc. 1, p. 15 in ECF).  The petition presents seven claims.  (Doc. 1).  Respondent asserts that none of petitioner's claims warrant habeas relief because two of them are procedurally defaulted and the remaining five do not meet the exacting standard of 28 U.S.C. § 2254(d).  (Doc.  17, pp. 16-54).[4]

---

[4] Although respondent makes the general statement that she "asserts all available procedural bars" and makes a passing reference that "[t]he AEDPA also imposed strict timeliness requirements on the filing of a federal habeas petition" (doc. 17, p. 16), respondent does not analyze the timeliness of the petition or suggest it is untimely.  It appears to the undersigned that the petition was filed outside the one-year limitations period established by 28 U.S.C. § 2244(d).  The undersigned chose not to exercise the court's discretionary authority to consider the timeliness issue *sua sponte*; however, should the District Judge find such consideration appropriate, the matter may be remanded to the undersigned for additional briefing and a supplemental report and recommendation on the timeliness issue.

## RELEVANT LEGAL STANDARDS

Procedural Default

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 565 U.S. —, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (alterations in original) (internal quotation marks and citations omitted); *see also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the state rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).  A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as

a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

>    (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>         (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>         (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168,

184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S.

at 694.   "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).   "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (citations omitted).

## DISCUSSION

**Ground One**  "Ineffective Assistance of Counsel for failing to call exculpatory witness Ladarin J. Brown."  (Doc. 1, pp. 5, 16-21 in ECF).

Petitioner alleges that prior to trial he informed defense counsel that LaDarin Brown would testify that petitioner "wasn't no where with himself and the other suspect (Tyrone Jackson) the night of the crime nor was Appellant the shooter of the crime.  Brown's testimony also would have given a description of the actual shooter that is totally different from the Appellant."  (Doc. 1, p. 16 in ECF).  To support this claim, petitioner attaches an affidavit from LaDarin Brown dated January 12, 2012, in which Brown states:

> On May 26-27, 2010, at approximately 9:30 am – 12:30 pm I went to Sterling Mallory's trail [sic] to testify on his behalf.  When I arrived to the courthouse I found Sterling Mallory's trail [sic] lawyer (Zachory Ward) and told him that I was there to testify on Sterling's behalf.  I told Mr. Ward that I wanted to let the Judge, Jury, and State know that Sterling Mallory did not come to the graduation party with me and Tyrone Jackson.  It was just me and Tyrone Jackson alone.  There was no third person with us.  While I was fighting the victim (Radelle Days) I seen who ran up behind him and shot him multiple times.  The man that shot (Radelle Days) was a light browned [sic] skin male that's just a little taller than myself with long dreads.  Mr. Ward refused to put me on the stand to testify on Sterling's behalf because I refused to say that Tyrone Jackson was the shooter the night of the graduation party.  I also called Mr. Ward a month before the trail [sic] several times but only got the voice mail and I left a voice message every time relying [sic] this information.

(Doc. 1, pp. 17-18 in ECF (Brown Aff.)).[6]  Petitioner also attaches a copy of a letter he wrote to defense counsel, dated February 11, 2010, in which petitioner told defense counsel that LaDarin Brown would testify that petitioner "didn't come to the graduation party with them and he didn't see [petitioner] out there."  (Doc. 1, p. 20 in ECF (letter from Mallory to Ward dtd. 2/11/10)).  Petitioner asserts that he presented this claim to the state courts in his first Rule 3.850 proceeding.

Respondent concedes that petitioner exhausted this claim.  (Doc. 17, p. 21).  Respondent asserts that petitioner is not entitled to habeas relief because the state courts' rejection of the claim was not contrary to and did not involve an unreasonable application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and was not based on an unreasonable determination of the facts.  (Doc. 17, pp. 21-27).

Petitioner raised this claim in his first Rule 3.850 proceeding in Grounds One through Three, where he faulted trial counsel for failing to call two alibi witnesses: LaDarin Brown and Quanicia Parramore.  (Ex. M, Grounds 1-3).  Petitioner asserted that both of these witnesses would have testified that petitioner did not accompany LaDarin Brown and Tyrone Jackson to the graduation party.   Petitioner's

---

[6] For clarification, "LaDarin" Brown is spelled "Ledairrian" in the trial transcript (Ex. B), and "Ladairrian" in the Rule 3.850 evidentiary hearing transcript (Ex. M).

postconviction counsel served LaDarin Brown with a subpoena to testify before the state circuit court at petitioner's postconviction evidentiary hearing. (Ex. M, p. 68). Mr. Brown failed to appear. (*Id.*). The evidentiary hearing was continued for four months to allow petitioner a second opportunity to secure Mr. Brown's testimony. (*Id.*). Mr. Brown was again subpoenaed and, again, failed to appear to testify at the evidentiary hearing. (*Id.*, pp. 68-69). Petitioner's trial counsel, Zachary Ward, testified at the Rule 3.850 evidentiary hearing as to why he did not call petitioner's proposed alibi witnesses and why he decided petitioner's proposed alibi defense was not viable:

> Q [Petitioner's postconviction counsel]: Who are the witnesses he [petitioner] told you about?
>
> A [Trial counsel Zachary Ward]: I know he directed me – I believe it was Quanicia Parramore – there was [sic] two young ladies. I think he told me to contact Quanicia Parramore. I had retained the services of Monica Jordan, as a private investigator in this case. And I can't recall whether I or Monica reached out – well, I'll go back. Mr. Mallory told me about this witness when I met with him in a booth in the Leon County Jail. Ms. Jordan and I contacted, I believe it was Quanicia, and asked her about the alibi situation.
>
> When we talked to the young lady she said that, yes Mr. Mallory was over at her house with Jerrell who – Jerrell's name, it's really Mr. Brown I think is – hold on real quick – Ladairrian Brown, Ladairrian J. Brown is Jerrell. She said he was over there with Jerrell, Weasel and maybe one or two other guys. They were hanging out for a little while, and then the guys left her apartment. So they were there, but they weren't there at the time of the alleged shooting. So it was sort of not

an alibi.  It kind of went along with the timeline that the State was proceeding under.

I went back and told Mr. Mallory that, hey this isn't going to work.  It's not really an alibi.  And a couple days later I got calls from Quanicia that they had decided that they wanted to change their story.  Ms. Jordan and I discussed it, and didn't feel comfortable with the new information.  It seemed like it was a lie.

Q:  How certain were you that it was a lie?

A:  Pretty sure.

Q:  Couldn't say for sure, though?

A:    Couldn't  say  for  sure.    Obviously  someone  could  totally misremember what had happened; and then two days after I talked to them and tell the defendant what I had found out, they change their story.  I mean, I guess it could happen, but it didn't seem – it seemed like to me that they had spoken to someone, and had come up with a story that was a better alibi.  Not to mention, what they stated [originally] conformed with what all the other witnesses were saying; primarily Mr. Jackson, who was the guy who flipped.

(Ex. M, pp. 80-81).  On cross-examination by the State, Attorney Zachary Ward testified to his extensive criminal trial experience and to the rule of professional conduct prohibiting lawyers from offering false evidence.  (Ex. M, pp. 85-86).  Attorney Ward reiterated that petitioner's presence at the party was consistent with Ms. Parramore's original version of events; that several people at the graduation party knew each other because they went to the same high school; and that several witnesses, including petitioner's associate Tyrone Jackson, confirmed that petitioner

was at the party. (Ex. M, pp. 87-89). In addition to eyewitnesses placing petitioner at the crime scene, scientific evidence (petitioner's DNA on clothing recovered near the scene) placed petitioner in the path where eyewitnesses saw the shooter flee. Attorney Ward testified that due to the substantial eyewitness and scientific evidence placing petitioner at the crime scene, he made a tactical decision not to employ a defense that petitioner was not there:

> If you're going to come up with a defense, it has to be a plausible narrative. If I stand up in front of a jury in closing argument and say, there's no proof that Mr. Mallory was even there, when there's copious amounts of proof that he's there, he's going to get found guilty. It was not a sound tactic to take in this case. The sound – the better defense was that, basically Mr. Jackson pulled the trigger during the course of a fight. Because there was at least some scintilla of evidence that that was true. Because one of the witnesses initially identified Mr. Jackson as the guy with the gun.

(Ex. M, p. 89). At the conclusion of the evidentiary hearing the state court denied relief on petitioner's ineffective assistance claim, explaining:

> THE COURT: All right. I'm going to deny the motion for postconviction relief. Let me go through each of the grounds. First, the failure to call Ladairrian Brown as a witness, Mr. Ward has explained his thinking. Of course, we don't have Ladairrian Brown here for the Court to assess credibility of. But the likelihood that Mr. Brown would have presented credible testimony, we can't even get him here to court, is highly unlikely. But as Mr. Ward has said, there wasn't any question Mr. Mallory was present at the scene. That was[n't] the strategy, to try to put on an alibi. I've watched alibi defenses time after time. Generally, they end up being the best evidence for the State. They are generally ineffective. And in the face of the multiple witnesses that identified Mr. Mallory as being present, and DNA

evidence putting him at the scene, Mr. Ward's strategy was certainly reasonable.  That's Ground 1 and Ground 2.

Ground 3 is to Quanicia Parramore.  An attorney is ethically bound not to call perjured testimony.  He had ample reason to believe Ms. Parramore was being untruthful.  It again would have flown in the face of a great deal of testimony.  But particularly in the light of the fact that she gave him two different versions of the facts, the second one being after making Mr. Mallory aware of the first statement by her, which did not help him, certainly supports Mr. Ward's decision.  I don't find that it was ineffective, nor was the defendant prejudiced by its failure.  That would be the same as to Grounds 1 and 2 also.

(Ex, M, pp. 103-105).  After denying relief on petitioner's remaining six claims, the state court concluded:  "I find that Mr. Mallory has failed to show ineffective assistance of counsel or prejudice as to any of the nine claims."  (*Id*., p. 107).  The First DCA summarily affirmed.  (Ex. Q).

The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations.  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("A state court's . . . determination of facts is unreasonable only if 'no fairminded jurist' could agree with the state court's determination. . . ."); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)).  Petitioner also has not shown, by clear and convincing evidence, that any factual finding is incorrect.

*See* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  This deference applies to the state court's credibility determinations, which are considered factual findings:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983).  We consider questions about the credibility and demeanor of a witness to be questions of fact.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011*); see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination"))).

Based on the state court's findings, it was neither contrary to, nor an unreasonable application of the *Strickland* standard to conclude that petitioner failed to overcome the strong presumption that counsel's decision not to pursue petitioner's proposed alibi defense or call LaDarin Brown to testify that petitioner did not accompany him to the party "fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S. Ct. at 17; *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." (*citing Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000))); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is a strategy left to counsel, which a reviewing court must not second-guess); *see also Richter*, 562 U.S. at 111 ("When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict.").

Also reasonable was the state court's conclusion that petitioner failed to establish a reasonable probability of a more favorable trial outcome had counsel decided to call LaDarin Brown to testify that petitioner did not accompany him to the party. Although Mr. Brown was willing to make statements in an affidavit after the fact, he was unwilling to testify in a court of law after twice being subpoenaed

to appear at petitioner's postconviction evidentiary hearing.  Even generously assuming to petitioner's benefit that there is a reasonable probability Mr. Brown would have responded to a trial subpoena and testified at petitioner's trial consistent with his affidavit, petitioner still has not established a reasonable probability that the outcome of his trial would have been different.  As counsel explained and the trial record establishes, Brown's proposed testimony did not present a plausible version of the facts given the substantial amount of evidence placing petitioner at the scene of the crime.  Petitioner has not shown there is a substantial likelihood the jury would have credited Brown's testimony over the overwhelming evidence to the contrary.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Ineffective Assistance of Counsel by not informing Appellant that the State possessed critical evidence that will be used against him at trial."  (Doc. 1, pp. 7, 22-31 in ECF).

This claim involves two black T-shirts found near the crime scene.  One T-shirt was completely inside the other.  (*See* Ex. D, pp. 228-231, 233-234 (testimony of crime scene technician Ron Rogers describing his collection of the clothing, placing it inside an evidence bag, sealing the bag, and labeling the bag as containing

"one 'cotton knit supreme' three extra large black T-shirt"), *see also id*., pp. 271-272 (testimony of FDLE analyst and DNA expert Jack Martin describing opening that same evidence bag and finding two black T-shirts, one "completely inside the other", with a size 4XL inside a size 3XL)).  DNA testing on the black 3XL T-shirt revealed a mixture of DNA from at least three people, with LaDarin Brown's profile identified as the major contributor and petitioner's profile a possible contributor. (Ex. D, pp. 273-274, 277).  DNA testing on the black 4XL T-shirt found inside the 3XL T-shirt revealed a mixture of DNA from at least three people, with petitioner's profile identified as the major contributor.  (*Id*., pp. 274-275).

Petitioner alleges that prior to trial he was aware that the State was going to introduce the 3XL T-shirt and the DNA test results on that shirt, but he was unaware, and defense counsel was ineffective for not telling him, that the 4XL T-shirt was found inside the 3XL shirt and was also going to be introduced as evidence along with the corresponding DNA test results.  (Doc. 1, pp. 22, 24 in ECF).  Petitioner argues that counsel's "withholding" of this information constitutes deficient performance because counsel is required to inform his client of all evidence that will be used against him.  Petitioner argues that counsel's failure to disclose the evidence to petitioner prejudiced him because it "made for the Appellant to go into 'trial by ambush'".  (Doc. 1, p. 22).  Petitioner states that had he known of the 4XL T-shirt

and its significance, he would have required counsel to postpone the trial until the defense could investigate why the two shirts were placed inside the same evidence bag and labeled by Rogers as only one T-shirt.  (*Id*., pp. 22, 24 in ECF).  Petitioner asserts he presented this claim to the state courts in his second Rule 3.850 proceeding.  (*Id*., p. 7 in ECF).

Respondent argues this claim is procedurally defaulted, because although petitioner presented it to the state courts in his second Rule 3.850 motion, the state court rejected the claim on independent and adequate state procedural grounds – it was untimely and successive.  (Doc. 17, pp. 27-31).  Respondent alternatively argues that the claim is without merit.  (*Id*., pp. 31-32).

The record establishes that this claim was presented to the state court in petitioner's second Rule 3.850 motion filed on July 7, 2014.  (Ex. X).  The circuit court denied relief as follows:

> The judgment and sentence was affirmed by the First District Court of [A]ppeal and the judgment became final on October 18, 2011. *Exh. 1 – Mandate*.  Defendant also filed a 3.850 motion which was denied on the merits and affirmed by the Frist District Court of Appeal. Accordingly, the instant motion is procedurally barred as untimely and successive.  The claims are not cognizable as an exception to the two-year timeliness requirement of Florida Rule of Criminal Procedure 3.850(b).

(Ex. Y).  Petitioner did not appeal this ruling.

The state court rejected petitioner's claim as procedurally barred by Florida's Criminal Rule 3.850. The Eleventh Circuit "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law." *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n. 25 (11th Cir.2005) (*citing Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990)); *see also* Fla. R. Crim P. 3.850(b) (establishing two-year time limitation for motions seeking relief under that Rule); Fla. R. Crim. P. 3.850(h) (providing for dismissal of successive motions). Because petitioner's second Rule 3.850 motion was filed outside Florida's two-year time limitation and raised claims that could have been raised in petitioner's first Rule 3.850 proceeding, the state court's refusal to consider this ground of ineffective assistance as procedurally barred rested on independent and adequate state grounds that preclude federal habeas review. Petitioner has made none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars habeas review of Ground Two.

Ground Three      "Ineffective Assistance of Counsel by failing to timely object and raise for Richardson Hearing." (Doc. 1, pp. 8, 32-33 in ECF).

Like Ground Two, this claim involves the two black T-shirts found near the crime scene. Petitioner claims trial counsel was ineffective for failing to timely

object and request a *Richardson*[7] hearing after counsel discovered that there were two black T-shirts inside the evidence bag instead of one.  (Doc. 1, pp. 32-33 in ECF).

Respondent concedes that petitioner exhausted this claim.  (Doc. 17, p. 33). Respondent asserts that petitioner is not entitled to federal habeas relief because the state courts' rejection of the claim was not contrary to and did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  (*Id*., pp. 33-36).

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground 9, where he claimed counsel was ineffective for failing to object and request a *Richardson* hearing when it was discovered that there were two black T-shirts instead of one.  (Ex. M, Ground 9).  Petitioner's postconviction counsel questioned Attorney Ward about this issue during the Rule 3.850 evidentiary hearing:

Q [Petitioner's postconviction counsel]:  I'm moving forward now to issues addressed in Grounds 6, 7 and 9.  Was DNA a factor in this case?

A [Attorney Zachary Ward]:  DNA was a factor in this case.

---

[7] In *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), the Florida Supreme Court established a state rule of procedure that if a party fails to comply with a discovery rule, the court must conduct an inquiry into the circumstances of the violation.  As described by the Florida Supreme Court in *Delhall v. State*, 95 So. 3d 134 (Fla. 2012), *Richardson* held that where a discovery violation occurs, "the trial court must conduct an inquiry as to whether the violation:  (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation."  *Delhall* at 160 (*citing Richardson* at 774-75).

Q:  How so?

A:  I can't remember what officer, but it was one of the evidence techs, I think it was Ellison from TPD.  The scene was cordoned off, there was a ton of people at the Shriner's Club.  They had a bunch of evidence techs running around, because it was a pretty – you know, it was an attempted murder, a bunch of shots had been fired.  And he located what they thought was a single T-shirt, black T-shirt – or dark brown, I can't remember which – behind the tattoo parlor; which is just across the street from the Shriner's Club, in the direction where they said the people fled.  That shirt, which turned out – we later realized, we didn't – nobody realized it, not even the evidence tech.  The people at FDLE, I think when they opened up the bag, realized it was two shirts that were intertwined.  But they had DNA matching Mr. Mallory.  It basically corroborated the statements of dozens of witnesses, that he was at the scene.

Q:  Can you describe the two T-shirts?

A:  There were two large T-shirts, and my belief or my understanding is, when the TPD tech grabbed it and bagged it, he listed it as one T-shirt.  Once the – we never saw what they looked like in the bag at that point, because it went to FDLE for testing.  When it went to FDLE, I think they pulled it apart, it was really two T-shirts.  But it was all seized at the same time.  It wasn't two T-shirts that were found at separate locations, and then put in the same bag.  If that had happened, then we have a great DNA cross-contamination issue.  But that's not what happened, they grabbed – apparently.  They grabbed both T-shirts – because it was like a 3-XL or a 4-XL – thinking it was the same T-shirt, and it wasn't pulled apart until later.

Q:  Did you become aware of this issue prior to trial?

A:  If I did, it was either during the trial or right before the trial.

Q:  Did that prejudice your ability to try the case?

A:  It didn't prejudice my ability to try the case, because I was not proceeding with the defense or the strategy that Mr. Mallory was not at the scene.  All it did was corroborate the voluminous other evidence the state had, that he was at the scene.

Q:  What was your strategy?

A:  Blame it on Weasel [Tyrone Jackson].  Just try to make it as unclear as possible, there was a fight involving a group of people that were at the Shriner's Club, and Mr. Mallory and a couple of his friends.  And just try to create as much confusion as to who was actually the shooter and who was just in a fist-fight, was the strategy.  And it was – based on what we had in the case, I thought it was the soundest strategy moving forward.

Q:  With the late revelation of there being two T-shirts, why not raise a Richardson issue?

A:  To me it just didn't seem like it was that big of a deal.  I already knew there was one – in my mind, I knew there was one T-shirt with his DNA coming into evidence.  The fact that it was – I mean, it seems like it was:  If I was wearing two T-shirts to the gym, and I got home and pulled the shirts off and threw them into my hamper, they're like one is inside the other.  The fact that it's really two t-shirts and not one T-shirt with his DNA, it didn't seem like – it wasn't going to change how I was going to defend the case.

(Ex. M, pp. 82-84).

At the close of the evidentiary hearing, the state circuit court denied relief on

this claim, explaining:

Grounds 6, 7 and 9 all relate to the T-shirt.  There was no discovery violation as to the T-shirt.  It just turned out it was two shirts in the bag, not one shirt in the bag.  That doesn't make for a discovery violation.  It did not change the defense strategy in any way.  I reject the defendant's testimony that he was not aware that there was DNA

evidence to be presented. That's refuted by the record and by Mr. Ward's testimony. There was DNA testimony. The fact that it came from two shirts versus one T-shirt did not change anything. I do not find that there was a legal objection as to chain of custody, as stated in Ground 6. I don't find that it was ineffective assistance of counsel to fail to challenge the black T-shirt, as in Ground 7. And I don't find that that there was a basis to make a discovery violation, and therefore was not ineffective assistance of counsel, in Ground 9. Everyone was aware a T-shirt had been discovered, everyone was aware it had DNA on it. The only thing that came out when they opened the bag is that it was two intertwined shirts, not one shirt. I don't find that there is a basis for any of those three claims, and I do not find the defendant was prejudiced.

(Ex, M, p. 106). The First DCA summarily affirmed. (Ex. Q).

Section 2254(d)(2) provides no basis for relief, because the state court's factual determinations are reasonable in light of the record before the state court. Section 2254(d)(1) likewise provides no basis for relief, because petitioner cannot show that the state courts' rejection of his ineffectiveness claim is contrary to, or an unreasonable application of, *Strickland*.

The state court concluded, as a matter of state law, that there was no basis for invoking the state-law *Richardson* procedure, because there was no evidence of a discovery violation. The state court also concluded, as a matter of state law, that even if the *Richardson* procedure had been invoked, petitioner would have received no benefit because the defense could not show it was prejudiced as required by state

law (i.e., that the alleged discovery violation had a prejudicial effect on the defense's trial preparation or strategy).

When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  Because this court will not "second guess" the Florida state courts' conclusion that there was no basis under state law to object to admission of the second T-shirt or invoke the *Richardson* procedure, petitioner cannot demonstrate his counsel was deficient for failing to raise the issue.  *See id*. at 932 (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec 'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir.2005) (denying federal habeas relief on petitioner's ineffective assistance claim based on counsel's failure

to make a state-law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim); *see also Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) ("As the underlying claim lacks merit, [ ] counsel cannot be deficient for failing to raise it."); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). The state courts' conclusion that the state-law *Richardson* claim would have failed also shows that counsel's failure to raise the claim caused no prejudice.

The state courts' rejection of this ineffective assistance claim was not contrary to or an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on Ground Three.

Ground Four          "Failure to challenge the chain in custody of State's Exhibits 6(a) and 6(b)." (Doc. 1, p. 10 in ECF).

Petitioner claims trial counsel was ineffective for failing to make a chain-of-custody-based challenge to admission of the two black T-shirts. (Doc. 1, pp. 23-24). Petitioner asserts that had counsel objected, the two T-shirts would have been excluded and the outcome of his trial would have been different.

Respondent concedes that petitioner exhausted this claim. (Doc. 17, p. 37). Respondent asserts that petitioner is not entitled to habeas relief because the state courts' rejection of the claim was not contrary to and did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. (*Id.*, pp. 37-40).

Petitioner raised this claim in his first Rule 3.850 proceeding as Grounds 6 and 7. (Ex. M). The state court denied relief, as quoted above, on the ground that the defense had no basis under state law to object to admission of the T-shirt on chain-of-custody grounds. (*See supra* Ground Three and quoted excerpt from evidentiary hearing transcript).

As with Ground Three, the objection petitioner faults counsel for failing to make is based on state law. The state courts have already answered the question of what would have happened had defense counsel objected to introduction of the T-shirts on chain-of-custody grounds – the objection would have been overruled because there was no basis for it. *See Garcia v. State*, 873 So.2d 426, 427 (Fla. 3d DCA 2004) (holding that the State is "not required to establish a complete chain of custody where the record does not demonstrate that there was a probability of tampering with the evidence."); *see also Davis v. State*, 788 So.2d 308, 310 (Fla. 5th DCA 2001) ("[To] bar the introduction of otherwise relevant evidence due to a gap

in the chain of custody, a defendant must show that there was a probability of tampering with the evidence.  A mere possibility of tampering is insufficient.").[8] Because this court will not "second guess" the Florida state courts' conclusion that there was no basis for petitioner's proposed state-law chain-of-custody objection, petitioner cannot demonstrate deficient performance or prejudice arising from counsel's failure to make that objection.  The state courts' rejection of this ineffective-assistance claim was not contrary to or an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in state court.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "Ineffective Assistance of Counsel for failing to impeach State's witness Keldrick Kirkland."  (Doc. 1, p. 36 in ECF).

Keldrick Kirkland (victim Radelle Days' nephew who was fighting with Tyrone Jackson at the time Days was shot) made an in-court identification of petitioner as the shooter.  (Ex. B, pp. 61-63, 71-72)  During cross-examination, Attorney Ward elicited Kirkland's admission that he did not see the shots being fired

---

[8] Petitioner made no showing in state court that defense counsel was aware of facts indicating the T-shirts had been tampered with.  To the contrary, Attorney Ward, whose testimony the state court credited, testified that the facts surrounding the collection and processing of the black T-shirts indicated that the technician who collected the evidence placed both shirts into the same bag and inadvertently labeled the bag as containing one shirt, because the shirts were so intertwined they appeared to be one shirt.

because his back was turned; that Kirkland merely saw "who was running off with the gun"; and that Kirkland could not describe the gun and was not sure what type of gun it was.  (Ex. B, pp. 72-73).  Petitioner faults trial counsel for failing to also impeach Kirkland's testimony with the results of a pre-trial photo line-up and Kirkland's pre-trial statements to police.  (Doc. 1, pp. 36-37).  Specifically, petitioner alleges that prior to trial, Mr. Kirkland viewed a photo line-up which included a picture of petitioner, but did not identify petitioner as the shooter.  In addition, two law enforcement officers indicated in their investigation reports that when they interviewed Mr. Kirkland he was unable to identify the shooter.

Respondent concedes that petitioner exhausted this claim.  (Doc. 17, p. 40).  Respondent asserts that petitioner is not entitled to habeas relief because the state courts' rejection of the claim was not contrary to and did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  (*Id*., pp. 41-44).

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Five.  (Ex. M, Ground 5).  The state court denied relief, explaining:

> Ground 5, failure to cross examine Keldrick Kirkland with prior line-up, in which he was not able to identify the defendant, is simply refuted by the record.  Well, it's not refuted that he failed to cross examine him [with the prior line-up identification], it's refuted that he failed to use it [the prior line-up identification].  Mr. Ward effectively used the misidentification.  Mr. Mallory seems to be under the mistaken

impression here that because Mr. Kirkland could not previously identify him, that he was prohibited from identifying him in court. That's not the law.  There was a failure by Kirkland to previously identify Mr. Mallory.  Mr. Ward argued that.  I find that in his argument at Page 311.  It is in the trial testimony at Page 236 through 240.  That information was before the jury.  There was no ineffective assistance of counsel and no prejudice to the defendant.

(Ex. M, pp. 105-106).  The First DCA summarily affirmed.  (Ex. Q).

The state court's findings of fact are amply supported by the record and are presumed correct.  Among those factual findings are:  (1) that Attorney Ward's testimony was credible, (2) that Ward <u>did</u> use Kirkland's pre-trial failures to identify petitioner as the shooter to support petitioner's defense, and (3) that Attorney Ward's decision to emphasize the issue through questioning of law enforcement witnesses and in closing argument, instead of during cross-examination of Kirkland, was a tactical one.  Viewed in light of the entire state court record, this court cannot find that "no fairminded jurist could agree" with these factual determinations.  *See Holsey*, *supra*.

At trial, TPD Officer David Covan testified that he showed Keldrick Kirkland two photo line-ups at the hospital on the morning of the incident, and asked Kirkland to "point out anyone he recognized."  (Ex. D, p. 237).  Covan identified State's Exhibit 9 as the two photo line-ups.  After reviewing the first line-up, Mr. Kirkland identified Tyrone "Weasel" Jackson, indicating that Jackson "was there" and that

"he and Mr. Jackson were actually involved in a[n] altercation when the shooting took place." (*Id*., p. 238). Mr. Kirkland did not identify anyone from the second photo line-up, which contained petitioner's picture. (*Id*., pp. 238-39). Attorney Ward emphasized, through cross-examination of Officer Covan, that Covan showed the photo line-ups to Mr. Kirkland just hours after the shooting, that Kirkland identified Tyrone Jackson, and that Kirkland did not identify petitioner. (*Id*., pp. 239-40).

Attorney Ward again emphasized, during his cross-examination of TPD Investigator Scott Beck, that when Keldrick Kirkland was shown the photo line-ups containing Tyrone Jackson's and petitioner's photographs, Mr. Kirkland "identified Mr. Jackson, but he did not identify Mr. Mallory". (Ex. D, p. 255). Attorney Ward also elicited testimony from Investigator Beck that when Beck spoke with Mr. Kirkland two days after the shooting, Kirkland could not identify the shooter. (*Id*., p. 256).

During closing argument, Attorney Ward emphasized to the jury that shortly after the shooting, Keldrick Kirkland identified Tyrone Jackson and LaDarin Brown as being at the scene of the shooting, but did not identify petitioner as present. (Ex. D, p. 311). Attorney Ward also emphasized that two days after the shooting, Kirkland stated he could not identify the shooter. (*Id*.). Ward pointed out that

Kirkland's in-court identification of petitioner as the shooter, when petitioner was the only young black male in the courtroom sitting by a white lawyer, was not as reliable as his inability to identify petitioner right after the shooting.  (*Id*., pp. 311-12).

At the Rule 3.850 evidentiary hearing, petitioner's postconviction counsel questioned Attorney Ward about Ward's cross-examination of Keldrick Kirkland:

> Q [Petitioner's postconviction counsel]:   I'm moving forward to Ground 5 of Mr. Mallory's motion.  Was there a line-up issue in this case?
>
> A [Trial counsel Zachary Ward]:  There wasn't really a line-up issue, as far as I was concerned.  One of the witnesses initially identified the guy known as Weasel [Tyrone Jackson] as the potential shooter.  I didn't consider that an issue.  I considered that a boon, because that was our best defense in the case.  Still, it was a good defense, that the guy who flipped, Weasel, was really the shooter; and it wasn't Mr. Mallory.
>
> Q:  Did you question that witness, on that point at issue?
>
> A:  Well once they gave me that information, no I didn't want to impeach the witness and try to make sure that their memory wasn't good.  Because the best statement we could have was that Tyrone Jackson was the guy with the gun, and not Sterling Mallory.  We dealt with it on closing, obviously tried to mention that to the jury.  But I'm not going to impeach a witness that gives me a little nugget of gold in a bad case.

(Ex. M, pp. 81-82).  The judge presiding over the postconviction evidentiary hearing also questioned Attorney Ward:

THE COURT:  The identification that was made by line-up of – we'll just call him Weasel, it seems to be easier to keep track of – by the witness in the line-up; did that come out at trial?

THE WITNESS:  It did.  You know, I asked him about it, and I certainly harped on it in closing.  Just because that was the only real confusion in the case.  And it was sort of the only shot that we had, and the tactic that I took.

(Ex. M, pp. 90-91).

In light of the state court's factual findings and the state court record as a whole, it was not unreasonable for the state court to conclude that petitioner failed to establish that Attorney Ward's tactical decision – to emphasize Kirkland's photo line-up identifications and statements to police during cross-examination of law enforcement witnesses instead of trying to impeach Kirkland with them – was objectively unreasonable.  It was also reasonable for the state court to conclude that petitioner failed to establish a reasonable probability, *i.e.,* a substantial likelihood, of a different result at trial had Attorney Ward taken petitioner's approach instead of the approach counsel took.  *Richter*, 562 U.S. at 112; *see also Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of the defense attorney,'" and "[a]bsent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of . . . the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*."  (citation omitted)).

The state courts' rejection of this ineffective-assistance claim was not contrary to or an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six        "Ineffective Assistance of Counsel by failing to take depositions/interview state's witnesses prior to trial."  (Doc. 1, p. 38 in ECF).

Petitioner faults trial counsel for failing to depose "the State's key witnesses". Petitioner argues that as a result of counsel's failure to take depositions, counsel's cross-examination "was a lot weaker than it should have been."  (Doc. 1, p. 38 in ECF).  Petitioner explains that depositions of the State's witnesses would have exposed "flaws" in their testimony prior to trial and enabled counsel to better prepare for cross-examination using those "flaws".  (*Id.*, pp. 38-39 in ECF).  Petitioner does not identify any particular witness counsel should have deposed, nor does petitioner specify any particular "flaw" in a witness' testimony that counsel was unable to address as a result of failing to take that witness' deposition.  Petitioner asserts he presented this claim to the state court in his first Rule 3.850 proceeding.  (*Id.*, p. 39 in ECF).

Respondent concedes that petitioner exhausted this claim.  (Doc. 17, p. 40). Respondent asserts that petitioner is not entitled to habeas relief because the state

courts' rejection of the claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard, and was not based on an unreasonable determination of the facts.  (*Id.*, pp. 41-44).

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Eight. (Ex. M, Ground 8).  The state court denied relief, explaining:

> As to Ground 8, the failure to depose witnesses, there's certainly no per se ineffective assistance of counsel to fail to talk to witnesses. Mr. Ward has a practice to talk to the witnesses, either himself or his investigator, outside of court.  There has been nothing shown here that would make that an ineffective strategy.  There's been nothing shown here as to how Mr. Mallory was prejudiced by any failure to depose witnesses.

(Ex. M, pp. 106-107).  The First DCA summarily affirmed.  (Ex. Q).

When Attorney Ward was asked during the postconviction evidentiary hearing whether he took depositions in this case, Ward testified that he did not, and that he instead chose to talk to the State's witnesses informally, either personally or through his private investigator.   Ward testified that generally, unless the case involved a sexually-based offense, his standard practice was to not take too many depositions.  In the course of Ward's practice, Ward found that witnesses, including law enforcement, were usually willing to talk to him, and that when he took that approach he usually knew the case better than the prosecutor.  Ward's experience was that he had a lot fewer cases than prosecutors and that, without depositions,

prosecutors often did not meet their witnesses before trial.  Talking to witnesses informally allowed Ward to discover what the witnesses would say without introducing them to the prosecutor at a deposition.  (Ex. M, pp. 84-85).

The state court record amply supports the state court's findings that (1) defense counsel (or his investigator) <u>did</u> talk to the State's witnesses prior to trial, (2) counsel's decision to discover witnesses' proposed testimony informally through interviews, instead of formally through depositions was a tactical one, and (3) petitioner failed to offer any particular instance where counsel's failure to depose a witness adversely affected the defense.  The state court ruled that petitioner failed to demonstrate counsel's strategy was unreasonable or that the strategy prejudiced the defense.

Nothing about the state court's no-deficiency and no-prejudice ruling is inconsistent with Supreme Court precedent or otherwise objectively unreasonable.  To the contrary, the state court's rulings are supported by the record and *Strickland* itself.  There is a reasonable argument that defense counsel satisfied *Strickland*'s deferential standard.  *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . .").  The same is true of the conclusion that petitioner failed to

satisfy *Strickland*'s prejudice standard. Petitioner is not entitled to federal habeas relief on Ground Six.

<u>Ground Seven</u>          "<u>Appellant raise[d] Giglio claim in which the State knew that witness Keldrick Kirkland was giving false testimony to the jurors while under oath and the State failed to correct witness K. Kirkland's testimony.</u>"  (Doc. 1, p. 40 in ECF).

Petitioner's final claim asserts that the State knowingly presented perjured testimony from Keldrick Kirkland.  The allegedly false testimony is this:

Q [Prosecutor]:  Okay.  The – prior to this incident, did you know a person named Tyrone "Weasel" Jackson?

A [Keldrick Kirkland]:  I know of him.

Q:  Had – do you know that he looked like?

A:  Yes.

Q:  Did you know a person named Sterling Mallory?

A:  I know of him.

Q:  Do you know what he looked like?

A:  Yes.

Q:  Do you see him in the courtroom?

A:  (Nods head.)

Q:  Can you point out where he's seated and what he's wearing, just what kind of – color shirt he's wearing?

A:  It looks beige.

Q:  Okay.  Can you point in his general direction?  Is he the person sitting next to the white guy in the gray suit?

A:  Yes.

Q:  Okay.  Please allow the record to reflect the witness identified the defendant.

(Ex. B, pp. 62-63).  Petitioner argues that the prosecutor's eliciting this testimony violated *Giglio*, because the prosecutor knew Kirkland failed to identify petitioner when Officer Beck showed Kirkland a photo line-up with petitioner's picture in it. (Doc. 1, pp. 40-41 in ECF).  Petitioner asserts he presented this claim to the state courts in his second Rule 3.850 proceeding.  (*Id.*, p. 41 in ECF).

Respondent asserts that this claim is procedurally defaulted for the same reason Ground Two is procedurally defaulted.  (Doc. 17, pp. 48-49).  Respondent alternatively argues that the claim is without merit.  (*Id.*, pp. 49-53).

The record establishes that petitioner presented this claim to the state court in his second Rule 3.850 motion filed on July 7, 2014 (Ex. X), and that the state court rejected the claim because petitioner failed to meet the state procedural requirements of Rule 3.850 (the claim was untimely and successive).  (Ex. Y).  The state court's judgment rests on independent and adequate state procedural grounds.  *See* discussion Ground Two, *supra*.  Petitioner's procedural default bars federal habeas review of Ground Seven.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Sterling S. Mallory*, Leon County Circuit Court Case No. 09-CF-1630, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 14th day of July, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.